Filed 7/13/22  In re Nathalie G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re NATHALIE G., a Person Coming Under the Juvenile Court Law. | B316146 (Los Angeles County Super. Ct. No. 19CCJP07740) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. BRENDA M. et al., Defendants and Appellants. |  |

APPEAL from orders of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant Brenda M.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant Edilson Z.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Raquel Ramirez, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellants Brenda M. (mother) and Edilson Z. (father) appeal from orders terminating parental rights over their daughter Nathalie (born 2019) and freeing Nathalie for adoption. The sole contention the parents raise in this appeal is that the orders must be reversed because a proper inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) was not undertaken.

We affirm the juvenile court's orders.

## BACKGROUND

**Detention and Welfare and Institutions Code[1] section 300 petition**

On November 26, 2019, the juvenile court issued an order authorizing the Los Angeles County Department of Children and Family Services (the Department) to remove Nathalie from the parents based on allegations of domestic violence and substance abuse. The Department could not place Nathalie with the maternal grandmother because of the maternal grandmother's admitted criminal history. Father provided no information for

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless stated otherwise.

2

possible placement with paternal relatives, and Nathalie was placed in the same foster home where she remains today.

The Department filed a section 300 petition on December 3, 2019, alleging the parents had a history of engaging in violent altercations in Nathalie's presence, and both parents had histories of substance abuse and were current users of amphetamine, methamphetamine, and marijuana. An Indian child inquiry attachment ICWA-010A form that accompanied the section 300 petition indicated that ICWA inquiries were made and that Nathalie had no known Indian ancestry. The form does not specify, however, those with whom the ICWA inquiries were made. The Department's detention report stated that ICWA did not apply.

Both parents, the maternal grandmother, and the paternal grandfather were present at the December 4, 2019 detention hearing at which the juvenile court found father to be Nathalie's presumed father. Both parents submitted a Parental Notification of Indian Status form, form ICWA-020, indicating they had no Indian ancestry to their knowledge. At the hearing, the juvenile court stated, "[B]oth parents indicate they have no Native American Heritage as far as they know. On that basis I find there is no reason to know the child is an Indian child within the meaning of ICWA, and I find that ICWA does not apply." The minute order indicates the parents filed ICWA-020 forms, the court found no reason to know Nathalie is an Indian child, and no ICWA notices were ordered. The minute order further states the "[p]arents are to keep the Department, their Attorney, and the Court aware of any new information relating to possible ICWA status."

3

Father's attorney asked the Department to assess the paternal grandfather and paternal great aunt for placement and to monitor father's visits with Nathalie. Mother's attorney also asked that the Department assess any available relatives to monitor her visits with Nathalie. The juvenile court ordered Nathalie detained from mother and father and accorded both parents separate monitored visits. The court ordered the Department to assess the paternal grandfather and paternal great aunt for placement and visitation monitoring.

**Contested adjudication and disposition hearing**

The Department reported in February 2020 that mother was born and raised by the maternal grandparents in Los Angeles, California. Mother was placed in foster care as a child because of the maternal grandparents' alcohol abuse and domestic violence.

Father was born and raised by the paternal grandparents in Guatemala. He emigrated to the United States when he was in the third grade. He met mother in 2017, had Nathalie in 2019, and separated from mother in November 2019 but continued to live with her.

The Department attempted to place Nathalie in the paternal grandfather's home in May 2020 but could not do so because mother and father were residing in the home. The Department also contacted the paternal great aunt for placement, but the great aunt said she did not have room in her one-bedroom apartment for Nathalie.

At the February 3, 2020 combined adjudication and disposition hearing, the juvenile court sustained the allegations of the section 300 petition. The court granted mother reunification services but denied services to father because his

4

whereabouts were unknown.  Mother's counsel asked that the Department assess the paternal grandfather for placement, and the juvenile court ordered the Department to assess all appropriate relatives for placement.

**Review proceedings and termination of reunification services**

In March 2021, the Department reported that mother was not in compliance with her court-ordered programs and continued to test positive for methamphetamine.  Mother attended three visits with Nathalie between September 2020 and March 2021.  The juvenile court terminated mother's reunification services on March 22, 2021.

**Section 366.26 proceedings**

In August 2021, the Department reported that mother was in an inpatient treatment program and father was incarcerated.  The maternal grandmother informed the Department that mother was pregnant and was scheduled to give birth later that month.

The Department further reported that the paternal grandfather had been assessed as not suitable for placement because of his criminal history and because he shared a residence with the parents.  The maternal grandparents had also been assessed and not approved for placement because of their criminal and child welfare histories.  At the request of father's attorney, the juvenile court ordered the Department to assess the paternal grandmother and to facilitate her visits with Nathalie.

Mother gave birth to a baby boy in August 2021.  The infant was detained in the same foster home with Nathalie.

In October 2021, the Department reported that it had contacted the paternal grandmother, who had been residing in

the United States since June 2021. The paternal grandmother said that she did not have appropriate housing to have Nathalie placed with her, but she wanted to begin visits with Nathalie.

Mother made a video appearance at the November 1, 2021 section 366.26 hearing. Father was present in custody. The juvenile court denied mother's section 388 petition for additional reunification services. The court then found Nathalie was adoptable and that no exception to terminating parental rights applied. The court terminated both parents' parental rights.

This appeal followed.

## DISCUSSION

Mother and father both contend the order terminating parental rights must be reversed because the Department and the juvenile court failed to ask the reporting party, the maternal grandparents, and the paternal grandparents whether Nathalie is or may be an Indian child under ICWA. The record does not show that the Department fulfilled its statutory duty of initial inquiry by asking these persons about Nathalie's possible Indian status. The failure to do so was error. We conclude, however, that the error was not prejudicial, given the parents' disclaimer of any knowledge of Indian ancestry and the absence of any indication in the record that would provide a reason to believe that Nathalie is an Indian child. (*In re Dezi C.* (2022) 79 Cal.App.5th 769.)

## I. Applicable law

ICWA and related California statutes reflect the Legislature's intent "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards

6

for the removal of Indian children from their families." (25 U.S.C. § 1902; see *In re K.R.* (2018) 20 Cal.App.5th 701, 706, fn. 3.) An "Indian child" is defined as any unmarried person under the age of 18 who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subds. (a), (b).)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741.) "The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) The court and child welfare department "have an affirmative and continuing duty" to inquire whether a child for whom a petition under section 300 may be or has been filed may be an Indian child. (§ 224.2, subd. (a).)

Under California law, the child welfare department's initial duty of inquiry includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother

or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).)

The juvenile court must also inquire at each participant's first appearance in court whether the participant knows or has reason to know that the child is an Indian child. (§ 224.2, subd. (c).) In addition, the juvenile court must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child. (*Ibid*.)

If the "initial inquiry creates a 'reason to *believe'* the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' ([§ 224.2], subd. (e), italics added.) [I]f that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

Neither the duty of further inquiry nor the ICWA notice provisions are at issue here because no one contends there is reason to know Nathalie is an Indian child.

## II. No prejudicial error

The parents' ICWA challenge is based on the Department's failure to ask the reporting party and extended family members (the maternal and paternal grandparents) about potential tribal membership. The juvenile court's alleged dereliction of its duty is

8

the failure to ensure a proper inquiry by the Department. The statutory duty to ask extended family members about a child's possible Indian heritage is imposed by California law on child welfare agencies only. (§ 224.2, subd. (b).) Federal law imposes no such duty. (*In re S.S.* (2022) 75 Cal.App.5th 575, 581; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The failure to inquire of extended family members accordingly is an error under state law only. Under California law, we may not reverse unless we find that error was prejudicial. (Cal. Const., art. VI, § 13; *In re Benjamin M., supra*, 70 Cal.App.5th at p. 742.)

In determining whether the failure to conduct a proper ICWA inquiry was prejudicial, our division recently held that reversal is warranted only when the record indicates there was a "reason to believe" that the child is an Indian child. (*In re Dezi C., supra*, 79 Cal.App.5th 769.)

While appellate courts have adopted different standards, we, for the reasons set forth in *In re Dezi C.*, have adopted the reason to believe standard.

The record in this case reveals no reason to believe that the child was an Indian child, and neither parent asserts that such information exists. Both parents filed ICWA-020 forms stating they had no Indian ancestry to their knowledge. Both parents, along with the paternal grandfather and maternal grandmother, appeared at the detention hearing at which the juvenile court found, based on the parents' representations, that it had no reason to know that ICWA applied. At that hearing, the juvenile court asked whether any party wished to present additional evidence or to be heard as to detention or visitation. Both parents were in contact with paternal and maternal extended family members. Mother and Nathalie moved in to the maternal

9

grandmother's home at the outset of the case. Both parents lived in the paternal grandfather's home at one point during the case. Neither parent brought to the Department's or the juvenile court's attention any additional information relevant to ICWA.

The record also shows that father was born and raised by the paternal grandparents in Guatemala and that he emigrated to the United States as a young child. The paternal grandmother had been in the United States only since June 2021. Given these facts, as well as father's denial of any Indian ancestry, there is no indication that there was any reason to believe Nathalie is an Indian child.

On the record presented here, we cannot conclude that the Department's failure to ask the maternal and paternal grandparents about Nathalie's Indian ancestry was prejudicial error.

## DISPOSITION

The orders terminating parental rights and freeing Nathalie for adoption are affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.

10